IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Save the Scenic Santa Ritas, et al.,<br><br>　　　　　Plaintiffs,<br><br>v.<br><br>United States Army Corps of Engineers, et al.,<br><br>　　　　　Defendants. | No. CV-19-00177-TUC-JAS (Lead)<br>No. CV-19-00205-TUC-JAS (C)<br><br>**ORDER** |

Pending before the Court are Plaintiffs Tohono O'odham Nation, Pascua Yaqui Tribe, and the Hopi Tribe ("the Tribes") and Save the Scenic Santa Ritas *et al.* ("SSSR") Joint Emergency Motion to Lift the Stay (Doc. 104), the Tribes Motion to Supplement Complaint (Doc. 106), the Tribes Motion for Temporary Restraining Order (Doc. 108), to which SSSR has filed a Statement of Support (Doc. 110), and SSSR's Motion to File a Supplemental Complaint (Doc. 111). Intervenor-Defendant Rosemont Copper Company ("Rosemont") and the United States Army Corps of Engineers ("the Corps) (collectively, "Defendants") responded, and the Tribes and SSSR (collectively, "Plaintiffs") replied. Also pending before the Court is Rosemont's Motion to Dismiss Complaints for Lack of Subject Matter Jurisdiction (Doc. 140) to which the Corps and Plaintiffs responded, and Rosemont replied. The Court has considered the briefing, the entire record in these consolidated cases, and the relevant authority.

**BACKGROUND**

These consolidated cases challenge the Corps' decision to issue a Clean Water Act

("CWA") Section 404 Permit ("the Permit"), *see* 33 U.S.C.A. § 1344, to Rosemont for its proposed Rosemont Copper Mine project ("Rosemont Mine Project"). In 2019, the Corps issued a permit to Rosemont authorizing discharge of dredged or fill materials into potential waters of the United States ("WOTUS") at certain locations within the Rosemont Mine Project, a large open pit copper mine on the northeast side of the Santa Rita Mountains south of Tucson, Arizona. The relevant area included approximately 3,653 acres of national forest land within the boundaries of the Coronado National Forest. Plaintiffs promptly sued the Corps under the Administrative Procedures Act ("APA"), alleging that the Corps improperly issued the Permit. Plaintiffs claimed that the Corps violated the CWA and the National Environmental Policy Act ("NEPA") when it issued the Permit to Rosemont and requested that the Court vacate the Permit and enjoin the Corps from reissuing it until Defendants comply with the CWA, NEPA, and their implementing regulations.

Shortly after Plaintiffs filed their complaints in these cases, this Court granted summary judgment in a separate action brought by Plaintiffs, concluding that the final environmental impact statement ("FEIS") and the record of decision ("ROD") that the Corps based its environmental analysis under NEPA on was flawed and vacated and remanded the FEIS. *See Ctr. for Biological Diversity v. United States Fish & Wildlife Serv.*, 409 F. Supp. 3d 738 (D. Ariz. 2019), *aff'd,* No. 19-17585, 2022 WL 1495007 (9th Cir. May 12, 2022). As a result of the Court's ruling in that action, the Corps suspended the Permit at issue in these cases because the Corps relied on the flawed FEIS in approving the Permit. The Court granted the Corps' Motion to Stay (Doc. 98) the lawsuits challenging the issuance of the Permit until the Corps takes further action to reinstate, modify, or revoke the suspended Permit (Doc. 102).

In 2020, Rosemont began drilling and other exploration activities on its privately owned land on the northwest side of the Santa Rita Mountains. Rosemont calls this project Copper World ("the Copper World Project"). On March 10, 2022, Rosemont notified the Pima County Regional Flood Control District that it intended to start clearing, grading, stockpiling, and other earthwork associated activities related to the tailing and waste rock

storage facilities on its privately owned land in connection to the Copper World Project. On April 6, 2022, the Corps asked Rosemont to provide information indicating the location of the Copper World Project in relation to the Rosemont Mine Project covered by the suspended Permit. Rosemont replied on April 11, 2022, that it has not impacted any of the washes covered by the Permit since it was suspended and will not do so until it is revoked or reinstated.

After obtaining Rosemont's letter to Pima County and learning of Rosemont's exploration activities, Plaintiffs sent letters to Rosemont asking for additional information, and to the Corps demanding that the Corps prepare a supplemental environmental impact statement ("EIS") and consult with the Tribes about the work. The Corps has not yet taken any specific action.

On April 4, 2022, Plaintiffs sent a 60-day Notice of Intent to Sue under the citizen suit provision of the CWA to Rosemont, the EPA, and the Arizona Department of Environmental Quality, alleging that Rosemont's activities in the Copper World Project violate the CWA.[1] Days later, Plaintiffs sought leave to supplement their original complaint based on Rosemont's alleged CWA violations. Plaintiffs seek to add claims under the APA, asserting that the Corps violated NEPA and the National Historic Preservation Act ("NHPA"). They request that the Court remand this matter to the Corps, ordering it to prepare a supplemental EIS and consult with the Tribes regarding the Copper World Project. Plaintiffs also seek a preliminary injunction[2] enjoining Rosemont's activities within the Copper World Project. Days after responding to Plaintiffs' motions, Rosemont filed its Motion to Dismiss Complaints for Lack of Subject Matter Jurisdiction (Doc. 140). These motions are also now fully briefed.

**DISCUSSION**[3]

**Rosemont's Motion to Dismiss**

---

[1] Plaintiffs submitted an amended notice on April 14, 2022.
[2] Plaintiffs moved for a temporary restraining order. However, the Court construes this motion as a motion for preliminary injunction (*see* Doc. 130) and may refer to it as such in this Order.
[3] Unless otherwise indicated, internal quotations and citations have been omitted throughout this order.

Rosemont moves under Federal Rule of Procedure ("FRCP") 12(b)(1) to dismiss all of Plaintiffs' claims in these consolidated cases for lack of subject matter jurisdiction because the claims are moot. Given the status of the Permit and the uncertainty surrounding its fate, on April 28, 2022, Rosemont sent a letter to the Corps notifying it that Rosemont voluntarily surrendered the Permit. Rosemont has further avowed that it will not use the Permit and consents to the Court formally vacating it.

"Article III of the Constitution limits the jurisdiction of the federal courts to the consideration of 'cases' and 'controversies.'" *Nat'l Parks Conservation Ass'n, Inc. v. U.S. Army Corps of Engineers*, 574 F. Supp. 2d 1314, 1319 (S.D. Fla. 2008) (citing U.S. CONST. art. III, § 2, cl. 1). "A case is moot when the issues no longer involve a live case or controversy with respect to which the court can provide meaningful relief." *Nat'l Parks Conservation Ass'n, Inc.*, 574 F. Supp. 2d at 1319 (citing *Arizonans for Off. Eng. v. Arizona*, 520 U.S. 43, 45 (1997)*; Murphy v. Hunt,* 455 U.S. 478, 481 (1982); *Sheely v. MRI Radiology Network, P.A.,* 505 F.3d 1173, 1183 (11th Cir.2007); *Forest Guardians v. U.S. Forest Serv.*, 370 F. Supp. 2d 978, 984 (D. Ariz. 2004) ("Where the issues presented are no longer live and the parties, therefore, lack a legally cognizable interest for which courts can grant a remedy, an action is generally mooted."). "If events that occur subsequent to the filing of a lawsuit or an appeal deprive the court of the ability to give the plaintiff or appellant meaningful relief, then the case is moot and must be dismissed." *Al Najjar v. Ashcroft*, 273 F.3d 1330, 1336 (11th Cir. 2001). "Dismissal is required because mootness is jurisdictional." *Nat'l Parks Conservation Ass'n, Inc.*, 574 F. Supp. 2d at 1319 (citing *Al Najjar*, 273 F.3d at 1336); *Aguirre v. S.S. Sohio Intrepid*, 801 F.2d 1185, 1189 (9th Cir. 1986) ("[M]ootness is an element of justiciability . . . ."). "Any decision on the merits of a moot case or issue would be an impermissible advisory opinion." *Fla. Ass'n of Rehab. Facilities, Inc. v. State of Fla. Dep't of Health & Rehab. Servs.*, 225 F.3d 1208, 1217 (11th Cir. 2000).

"The Supreme Court, however, has established an exception to the general principle of mootness for cases in which the challenged conduct is capable of repetition but evades

review." *Nat'l Parks Conservation Ass'n, Inc.*, 574 F. Supp. 2d at 1319 (citing *Weinstein v. Bradford,* 423 U.S. 147, 148–49 (1975)). "The exception is limited to extraordinary cases where (1) the duration of the challenged action is too short to allow full litigation before it ceases, and (2) there is a reasonable expectation that the plaintiffs will be subjected to it again." *See id.*

These consolidated actions challenge the Corps' decision to issue the Permit to Rosemont. However, because Rosemont has surrendered the Permit, avowed that it will not use it, and does not request that it be reissued, there is no longer a live case or controversy surrounding the propriety of the Corps decision, and the relief Plaintiffs request is no longer available. Accordingly, these cases are moot and must be dismissed for lack of jurisdiction.

Plaintiffs' original and supplemental complaints seek relief in the form of an order vacating the Permit and enjoining the Corps from authorizing any activities under it until Defendants comply with the CWA, NEPA, and their implementing regulations. However, this relief is no longer available because Rosemont has surrendered the Permit. Consequently, there is no longer any permit to vacate or any authorization to enjoin. Even if the Court were to do as Plaintiffs request and issue an order vacating the Permit and remanding to the Corps to prepare a supplemental EIS and consult with the Tribes regarding the Copper World Project, that order would have no effect. Rosemont has given up the Permit and does not ask that it be reissued. There would be nothing for the Corps to reevaluate or to consult with the Tribes about. The sole relief Plaintiffs seek, an order vacating the Permit and remanding to the Corps for reevaluation and consultation, has been rendered unavailable now that Rosemont has surrendered the Permit. Plaintiffs therefore have no cognizable interest in their claims that stem from the Corps' decision to issue the Permit to Rosemont.

Plaintiffs argue that these cases are not moot and the Permit remains in effect because the core dispute between Plaintiffs and the Corps, whether the Corps has a non-discretionary duty to engage in tribal consultation and undertake a comprehensive

supplemental analysis of Rosemont's activities within the Copper World Project, remains alive and well. However, it is well accepted that, when a permit is no longer effective, the related claims become moot.

In *Riverkeeper, Inc. v. Mirant Lovett, LLC*, the court found that the plaintiff's request for declaratory and injunctive relief became moot when defendant surrendered its CWA Section 404 permit. 675 F. Supp. 2d 337, 347–48 (S.D.N.Y. 2009). The court explained that it was impossible to order the relief plaintiffs asked for based on their CWA claim alleging that defendants violated their permit because the permit itself was no longer effective. *Id*. Other courts have come to similar conclusions. For example, in *Ohio Valley Environmental Coalition v. Hurst*, plaintiffs challenged the Corps' decision to issue a permit on the grounds that it failed to comply with the CWA and asked the Court to enjoin use of the permit until the Corps completed an EIS. *See* 604 F. Supp. 2d 860, 874 (S.D.W. Va. 2009). However, the challenged permit had expired. *Id*. at 874. Accordingly, the court found that plaintiff's claims no longer presented a live controversy, explaining that the claim was moot because the permit had expired and the Corps could not authorize any activity under it. Therefore, there was nothing for the court to enjoin and it could not provide effective relief. *Id*. at 874–75. And in *WaterWatch of Oregon v. U.S. Army Corps of Engineers*, the court found that the case was moot where the dredging permit that was the subject of the suit expired during the litigation. No. CIV. 99-861-BR, 2000 WL 1100059, at *2 (D. Or. June 7, 2000). The court explained that, because the permit was no longer effective, the permittee would have to apply for a new permit if it wanted to engage in further activities covered by the permit and would then be subject to the ESA's consultation requirements. *Id*. The law in this area is replete with similar examples. *See e.g.*, *National Parks Conservation Ass'n, Inc. v. U.S. Army Corps of Engineers*, 574 F. Supp. 2d 1314, 1324 (S.D. Fla. 2008) (dismissing claims under the CWA, ESA, and the APA, for lack of a live controversy when the challenged Section 404 permit expired); *Forest Guardians v. U.S. Forest Serv.*, 370 F. Supp. 2d 978, 984 (D. Ariz. 2004) (holding claims regarding Forest Service special use permit were moot because the permit expired).

In sum, a claim is moot where it challenges a permit that has been surrendered or is otherwise no longer effective.

Plaintiffs attempt to distinguish these cases, arguing that this principle only applies where the extinguishing of the permit is accompanied by the activities it previously authorized stopping because the developer either completed or terminated the project. While it is true that in the cases Rosemont cites loss of the permit occurred alongside cessation of the conduct it authorized, that is not the operative fact. *Riverkeeper* makes this clear. There, the generation station at issue was shut down and demolished. *Riverkeeper, Inc.*, 675 F. Supp. 2d at 347. However, the plaintiff argued that even though the generation station was destroyed, as long defendants retained the permit they could conceivably rebuild and continue the alleged violations. *Id*. The Court explained that "this was precisely the situation presented in [*Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 179 (2000),]: even though the *Laidlaw* facility was 'closed, dismantled, and put up for sale, and all discharges from the facility permanently ceased,' . . . the Supreme Court declined to find the case moot because the *Laidlaw* defendant retained its permit and could have rebuilt the facility and again violated the Act." *Id*. at 347–48. However, the *Riverkeeper* court found that the case was moot because the defendant there had not only demolished the station but surrendered the permit and could no longer commit any violations under it. *Id*. It was because the defendant surrendered the permit that was the subject of the action, not the cessation of the activities is previously authorized, that the case was rendered moot.

Plaintiffs further argue that Rosemont is not able to voluntarily surrender the Permit. They contend that there is no regulatory process to surrender a Section 404 permit. While Plaintiffs are right that the Corps' regulations state that "Permits continue in effect until they automatically expire or are modified, suspended, or revoked," 33 C.F.R. § 325.6(a), the Court agrees with Rosemont that those regulations do not preclude a permittee from voluntarily surrendering a permit and relinquishing their rights under it. It would be illogical to read the regulations such that they would prevent a permittee from surrendering

its own permit when it no longer wants it and avows that it has taken no action pursuant to it and will not do so. *United States v. LKAV*, 712 F.3d 436, 444 (9th Cir. 2013) ("We must avoid an interpretation that would produce absurd results.").

Moreover, the Corps' regulations also provide that it "may reevaluate the circumstances and conditions of any permit . . . at the request of the permittee and initiate action to modify, suspend, or revoke a permit as may be made necessary by considerations of the public interest." See 33 C.F.R. § 325.7(A). Even if the Court were to construe Rosemont's surrender of the Permit as a "request for revocation" as the Corps does, it would not change the result here because it would be irrational to conclude that a permittee requires the Corps' permission to surrender a permit simply because it was the Corps that issued it.

Plaintiffs argue that permitting Rosemont to surrender the Permit would eviscerate Section 404 of the CWA and characterize Rosemont's actions as a ploy to evade applicable legal requirements. They overstate the case: Plaintiffs still have a remedy under the CWA. The CWA prohibits "the discharge of any pollutant by any person" unless the discharge is authorized under one of the Act's permitting programs. Section 404 is one such program. 33 U.S.C. § 1311(a). Rosemont's legal obligations, including any obligation to pursue a Section 404 permit, have always arisen solely on account of the CWA. *Fairbanks N. Star Borough v. U.S. Army Corps of Engineers*, 543 F.3d 586, 596 (9th Cir. 2008). If after surrendering the Permit Rosemont were to improperly discharge pollutants into WOTUS, they would violate the CWA and there would be grounds for the Corps to initiate an enforcement action and for Plaintiffs to file a citizen suit under the CWA. It does not follow that, because Rosemont has surrendered the Permit, it is immune from penalties for CWA violations.[4]

---

[4] On May 20, 2022, Rosemont submitted a status report (Doc. 158) notifying the Court that the Corps is conducting a site visit on May 23 and 24, 2022, in connection with their permit revocation regulations. Rosemont reports that, while preparing for the visit, it noticed that native material comprised of soil and rocks had been placed in or inadvertently fallen into washes within the utility corridor for the Rosemont Copper Mine Project. Rosemont reported that the impact was small, that it has already removed the material, that it is restoring the washes to their prior condition, and that it has disclosed the incident to the Corps. Rosemont further represents that movement of the native material was caused by

- 8 -

As referenced, Plaintiffs need not wait for an enforcement action by the Corps because they can enforce the alleged violations against Rosemont themselves through the CWA's citizen suit provision.

> In general, actions can be brought by private persons and entities for the purpose of enforcing many of the provisions of the CWA. *See* 33 U.S.C. § 1365(a). That is usually referred to as the citizen suit provision. However, before an action is commenced, the citizen must give a 60–day notice of intent to sue. In fact, absent that notice, the action is prohibited. The notice serves important public purposes . . . . As [the Supreme Court] has pointed out: the legislative history indicates an intent to strike a balance between encouraging citizen enforcement of environmental regulations and avoiding burdening the federal courts with excessive numbers of citizen suits. Requiring citizens to comply with the notice and delay requirements serves this congressional goal in two ways. First, notice allows Government agencies to take responsibility for enforcing environmental regulations, thus obviating the need for citizen suits.... Second, notice gives the alleged violator an opportunity to bring itself into complete compliance with the Act and thus likewise render unnecessary a citizen suit. This policy would be frustrated if citizens could immediately bring suit without involving federal or state enforcement agencies. Giving full effect to the words of the statute preserves the compromise struck by Congress.

*Ctr. For Biological Diversity v. Marina Point Dev. Co.*, 566 F.3d 794, 799–800 (9th Cir. 2009) (citing *Hallstrom v. Tillamook County,* 493 U.S. 20, 29, 110 S.Ct. 304, 310, 107 L.Ed.2d 237 (1989)). As the Supreme Court has explained, the CWA's citizen suit provision, including the 60-day notice requirement, reflect a careful congressional balancing test for resolving disputes. Plaintiffs argue that Rosemont is attempting to take advantage of a purported loophole in the CWA that would allow a developer to voluntarily surrender a Section 404 permit, and then spend the 60-day notice period running roughshod over the CWA free from accountability. This is simply not the case. Plaintiffs are in no worse a position now than they would be had Rosemont began its exploration activities within the Copper World Project having never sought a Permit at all for their Rosemont Project related plans. Plaintiffs do not need the Court to lift the stay and allow them to supplement their APA claims against the Corps to challenge Rosemont's new activities

---

work on the Copper World Project and was not undertaken pursuant to the Permit. The Court has considered the status report and determined that it has no impact on this Order.

within the Copper World Project. They need only to file a new lawsuit against Rosemont under the CWA Citizen suit provision.[5]

Plaintiffs also argue that these cases are not moot because they are capable of repetition yet evading review. "The Supreme Court . . . has established an exception to the general principle of mootness for cases in which the challenged conduct is capable of repetition but evades review." *Nat'l Parks Conservation Ass'n, Inc.*, 574 F. Supp. 2d at 1319 (citing *Weinstein v. Bradford,* 423 U.S. 147, 148–49 (1975)). "The exception is limited to extraordinary cases where (1) the duration of the challenged action is too short to allow full litigation before it ceases, and (2) there is a reasonable expectation that the plaintiffs will be subjected to it again." *See id*; *Spencer v. Kemna*, 523 U.S. 1, 17 (1998) ("[T]here must be a reasonable expectation that the same complaining party will be subject to the same injury again, and the injury suffered must be of a type so inherently limited in duration that it is always likely to become moot before a federal court can fully review it.)" Both elements must be satisfied for the exception to apply. *See Potomac River Ass'n, Inc. v. Lundeberg Maryland Seamanship Sch., Inc.*, 402 F. Supp. 344, 352 (D. Md. 1975) (["T]he case is certainly capable of repetition, but it will not evade review."). "There is no mechanical or fixed test to determine whether an activity is of such short duration that it will evade judicial review." *Ohio Valley Env't Coal. v. Hurst*, 604 F. Supp. 2d 860, 875 (S.D.W. Va. 2009).

The evading-review prong of the exception is not satisfied here because the time between the issuance or extension of the Permit and its expiration is not so inherently limited as to evade review. The term of the Permit was five years. There are numerous cases reflecting that claims like those at bar are not so limited in duration as to evade review. *See e.g.*, *Northwest Res. Info. Ctr.,* 56 F.3d at 1070 (9th Cir.1995) (concluding that five years was "more than adequate time to obtain judicial review"); *Native Americans for Enola v. United States Forest Serv.,* 60 F.3d 645, 646 (9th Cir.1995) (holding that permits

---

[5] Plaintiffs need not wait long. The record reflects that Plaintiffs sent a 60-day Notice of Intent to Sue under the citizen suit provision of the CWA to Rosemont, the EPA, and the Arizona Department of Environmental Quality on April 4, 2022. As such, it appears that Plaintiffs could file their new CWA citizen suit in the very near future.

issued by the Forest Service, and the administrative process leading up to their issuance, were not inherently of such short duration that challenges to their validity would go unreviewed). In fact, the facts of this case are evidence that a challenge to the Corps permitting process is not so short as to evade review because Plaintiffs were already able to obtain an order suspending the Permit from this same Court.

While that evading-review prong is not met is already sufficient for the Court to find that the exception does not apply, the capable-of-repetition prong is also not satisfied. "[T]he [capable-of-repetition] prong of the exception requires a "reasonable expectation" that the same party will confront the same controversy again." *W. Coast Seafood Processors Ass'n v. Nat. Res. Def. Council, Inc.*, 643 F.3d 701, 704 (9th Cir. 2011). Because Rosemont has surrendered the Permit, the process by which it was issued will not be relevant again. If Rosemont seeks a new permit in the future for any of its projects, the Corps will initiate a new permitting process, which will create its own record and distinct legal issues. Plaintiffs will not be confronted with the same controversy again because the circumstances under which the Corps issued the Permit are unique to the administrative record underlying it. The exception to the mootness doctrine for cases that are capable of repetition yet evading review does not apply here.

In sum, plaintiffs have gotten what they wanted: Rosemont no longer has the Permit. Consequently, there is no case or controversy left for the Court to decide.[6] Plaintiffs have no cognizable interest in pursuing their claims solely against the Corps based on its decision to issue the Permit because the only relief the Court can order in these cases is no longer available. Accordingly, these consolidated cases are moot and must be dismissed for lack of subject matter jurisdiction.

**Motion to Lift Stay, Motions to Supplement Complaint, and Motion for Preliminary Injunction**

---

[6] Even if Rosemont's surrender of the Permit was ineffective and the Corps chose not to revoke it as Rosemont requested, Rosemont has consented to the relief sought in Plaintiff's original and supplemental complaints: an order vacating the Permit, which this Court would issue. Either way, this case is moot because it no longer involves a live case or controversy with respect to which the Court can provide meaningful relief.

- 11 -

Plaintiffs have submitted a Joint Emergency Motion to Lift the Stay (Doc. 104), Motions to Supplement their Complaints (Doc. 106, 111), and a Motion for Temporary Restraining Order (Doc. 108). Even if these consolidated cases were not moot, the Court would still deny Plaintiffs' motions because it has no jurisdiction to order the relief Plaintiffs request. Consequently, there is no reason to lift the stay because Plaintiffs' supplemental claims are futile. *See San Luis & Delta-Mendota Water Auth. v. U.S. Dep't of Interior*, 236 F.R.D. 491, 496 (E.D. Cal. 2006) (Leave to supplement is not proper where the supplemental claims are futile.).

NEPA "establishes action-forcing procedures that require agencies to take a hard look at environmental consequences." *Metcalf v. Daley*, 214 F.3d 1135, 1141 (9th Cir. 2000). "Similarly, Section 106 of [the] NHPA is a stop, look, and listen provision that requires each federal agency to consider the effects of its programs" on historical properties, such as traditional cultural sites, and avoid them to the extent possible. *Muckleshoot Indian Tribe v. U.S. Forest Serv.*, 177 F.3d 800, 805 (9th Cir. 1999). "[T]he fundamental purpose of the NHPA is to ensure the preservation of historical resources." *Te-Moak Tribe of W. Shoshone of Nevada v. U.S. Dep't of Interior*, 608 F.3d 592, 609 (9th Cir. 2010). Agencies must consult with Indian tribes "to identify its concerns about historic properties, advise on the identification and evaluation of historic properties, including those of traditional religious and cultural importance, articulate its views on the undertaking's effects on such properties, and participate in the resolution of adverse effects. 36 C.F.R. § 800.2(c)(2)(ii)(A). Where agencies subsequently discover "unanticipated effects on historic properties," they must "consult to resolve" those adverse effects. *Id.* § 800.13(b).

To comply with NEPA, agencies "shall prepare supplements" whenever there are: (1) substantial changes in the proposed action that are relevant to environmental concerns; or (2) significant new circumstances or information relevant to environmental concerns and bearing on the proposed action or its impacts. 40 C.F.R. § 1502.9(d)(1). NEPA requires agencies to analyze the proposed action, as well as all "connected" or "cumulative actions," in a single EIS. 42 U.S.C. § 4332(C); 40 C.F.R. § 1501.9(e)(1). The Ninth Circuit has

applied an "independent utility" test to determine whether multiple actions are connected or cumulative so as to require consideration in a single EIS. *See Great Basin Mine Watch v. Hankins*, 456 F.3d 955, 969 (9th Cir. 2006). "The crux of the test is whether *each of two projects* would have taken place *with or without the other* and thus had independent utility." *Sierra Club v. Bureau of Land Mgmt.*, 786 F.3d 1219, 1226 (9th Cir. 2015) (emphasis in original). Under this test, "when one of the projects might reasonably have been completed without the existence of the other, *the two projects have independent utility* and are not 'connected' for NEPA's purposes." *Id.* (emphasis in original). NEPA likewise requires agencies to analyze "cumulative actions"—those actions that, when viewed with other proposed actions, have cumulatively significant impacts—in a single NEPA document. 42 U.S.C. § 4332(C).

The Ninth Circuit has repeatedly enjoined construction activities to "maintain the status quo" pending NEPA compliance. *See Alaska Conservation Council v. U.S. Army Corps of Eng'rs*, 479 F.3d 1148, 1151 (9th Cir. 2007). To that end, it has affirmed courts' authority to enjoin development projects whose "viability is founded on the Corps' issuance of a Section 404 permit" pending compliance with NEPA. *White Tanks Concerned Citizens v. Strock*, 563 F.3d 1033, 1042 (9th Cir. 2009). However, it is well established that "the Clean Water Act leaves it to the discretion of the EPA Administrator whether to find violations and to take enforcement action, and that these discretionary decisions are not subject to judicial review . . . ." *Sierra Club v. Whitman*, 268 F.3d 898, 901 (9th Cir. 2001) (rejecting claim seeking to require EPA to enforce CWA provisions).

Plaintiffs contend that Rosemont's activities in the Copper World Project constitute both a substantial change to and significant new information relevant to environmental concerns of the Rosemont Mine Project. Therefore, Plaintiffs argue that the Corps has a non-discretionary duty under NEPA to prepare a supplemental EIS analyzing the Copper World Project and to consult with the Tribes regarding it pursuant to the NHPA. Plaintiffs further request that the Court enjoin Rosemont's activities in the Copper World Project pending the Corps' compliance with NEPA and the NHPA.

Plaintiffs argue that this Court has jurisdiction to order such relief because the Rosemont Mine Project and the Copper World Project are connected actions. However, if the two projects are not connected, then the non-discretionary duty NEPA places on the Corps to prepare a supplemental EIS in response to substantial changes or new information is not triggered by Rosemont's activities within the Copper World Project. And then, because this Court has no jurisdiction to order the Corps to undertake a discretionary duty, like initiating an enforcement action, there is no legal foundation to enjoin Rosemont's actions.

The Court finds that the Rosemont Mine Project and the Copper World Project have independent utility and are not connected or cumulative actions under NEPA. The Rosemont Mine Project was proceeding on its own in various stages for years before this Court stopped its progress on July 31, 2019.[7] Later, starting in 2020, Rosemont began work on the Copper World Project despite its inability to proceed as to the Rosemont Mine Project. The Rosemont Mine Project is on northeast side of the Santa Rita Mountains and encompasses approximately 3,653 acres of national forest land within the boundaries of the Coronado National Forest. The Copper World Project is on the northwest side of the Santa Rita Mountains and rests strictly on private land. The Copper World Project is temporally separated from the Rosemont Mine Project, is in a different location and, unlike the Rosemont Mine Project, is wholly on land that Rosemont privately owns. The record reflects that neither project depends on the other project, and each project could take place without the other.

Plaintiffs argue that the Rosemont Mine Project and the Copper World Project are

---

[7] The Rosemont Mine Project proceeded independently of the future Copper World Project for approximately a decade through the administrative permitting process and was set to begin full operations until this Court vacated the Forest Service's FEIS and ROD on July 31, 2019. As the FEIS and ROD were vacated, the Rosemont Mine Project could no longer move forward with operations. Only after operations ceased due to this Court's Order did Rosemont begin exploration and development activities on its private land encompassing the Copper World Project. As the Court's Order vacating the FEIS and ROD was affirmed by the Ninth Circuit on May 12, 2022, *Ctr. for Biological Diversity v. United States Fish & Wildlife Serv.*, No. 19-17585, 2022 WL 1495007 (9th Cir. May 12, 2022), the Rosemont Mine Project will be unable to operate for the foreseeable future while it winds its way through potential further appellate litigation and new administrative processes before federal agencies.

connected because there are synergies across the projects. For example, Plaintiffs cite a December 15, 2021, press release where Rosemont described its efforts to develop "the Copper World deposit in conjunction with the Rosemont deposit."[8] Plaintiffs further argue that the two projects rely on the same utility corridor to operate. However, even if there are synergies between the projects, that does not show that they are connected for purposes of NEPA. *Sierra Club v. Bureau of Land Mgmt.*, 786 F.3d 1219, 1226 (9th Cir. 2015) (finding that related projects were not connected because they were independently useful and that one would have likely been developed without the other); *Concerned Citizens & Retired Miners Coal. v. United States Forest Serv.*, 279 F. Supp. 3d 898, 912 (D. Ariz. 2017) (finding that the projects, "although clearly related, [were] not interdependent parts of a larger action that depend on the larger action for their justification."). The record reflects that Rosemont would develop the Copper World Project independently of the Rosemont Mine Project and is presently doing just that. An outdated press release containing puffery as to potential synergies between the projects and that the projects may share a utility corridor does not undermine that Rosemont might reasonably complete the Copper World Project without the existence of the Rosemont Mine Project.

For the forgoing reasons, the Copper World Project and the Rosemont Mine Project have independent utility and are not connected actions under NEPA. Because the projects are not connected, the Corps' non-discretionary duty to prepare a supplemental EIS is not triggered by Rosemont's activities within the Copper World Project and the Corps is not required to consult with the Tribes pursuant to the NHPA. Therefore, even if these cases were not moot the Court would deny Plaintiffs' motions because the Court lacks jurisdiction to grant the relief Plaintiffs request and there would be no reason to lift the stay

---

[8] The declarations of Andre Lauzon, Senior Vice President and Chief Operating Officer of Hudbay Minerals Inc. ("Hudbay"), the parent company of Rosemont, address the December 15, 2021, press release and reflect that the projects are not connected. As Lauzon explained, the "press release was referring to 'deposits' at each of the sites, not the projects themselves. This is a critical distinction: The deposit is the ore body, while the project consists of the specific methods and infrastructure that are used to mine and process the ore. The press release explains that there may be future synergies in connection with mining the Bolsa and Rosemont ore deposits, not that [the] Copper World [Project] is an expansion of the Rosemont [Mine Project] or that the projects are proceeding together."

because Plaintiffs supplemental claims would be futile. Accordingly,

**IT IS ORDERED** GRANTING Rosemont's Motion to Dismiss Complaints for Lack of Subject Matter Jurisdiction (Doc. 140). All other pending motions are DENIED. The Clerk shall enter judgment and close the file in these consolidated cases.

Dated this 23rd day of May, 2022.

Honorable James A. Soto
United States District Judge